Collins? Yes. Good morning. You may proceed. Thank you. Good morning, Justices, and may it please the Court. My name is Rich Collins, and I'm honored to represent Rosalyn Gonzales, the plaintiff and appellate before this Court. We're here to argue and explain to this Court how Ms. Gonzales's case should not have been dismissed. There is subject matter jurisdiction for her benefits claim against OPM, and there's a likely threat of future harm to establish her Article III standing. And Blue Cross Blue Shield's wrongful conduct is completely collateral to the plan and to the contract, so her claims against them should not be preempted. Ms. Gonzales is an employee through the Federal Employee Plan established by FEBA, the Federal Employee Health Benefits Act. That plan is administered by Blue Cross Blue Shield, the largest carrier who first contracted with OPM in 1960. Now, Blue Cross Blue Shield denied Ms. Gonzales her proton beam radiation therapy for the treatment of her cancerous tumor. It's otherwise known as PBRT. They claimed it was experimental or investigational, even though her doctors determined it was medically necessary, and PBRT was approved by the FDA in 1988. That's almost 35 years ago. And it's been recognized for decades by the medical community as an appropriate cancer treatment. So how could BCBS reach such an illogical conclusion? I mean, the plan covers radiation therapy. There's no exclusion for proton beam radiation, and proton beam radiation is not experimental or investigational. How did they do it? They did it with the BCBS internal FEP Medical Policy Manual, Section 8.01.10, the PBRT guideline. And this guideline is nowhere in the 187-page plan. And it limits proton beam radiation for just three cancers, cancers of the eye, the brain, and pediatric central nervous systems. That's it. Every other type of cancer, it's denied. Now, Blue Cross Blue Shield has an Advanced Benefit Determination Process, or ABD. Now, that ABD process, also not in the plan. And it's reserved for just high-dollar outpatient procedures. Now, when Ms. Gonzalez appealed that denial to Blue Cross Blue Shield, they upheld the denial, and they told her, you don't have a right to appeal this to the OPM, even though the council was there and appealed to OPM, despite what she may have been told, was there an exhaustion of appeal rights to OPM? She did not appeal OPM because she was specifically told multiple times by Blue Cross Blue Shield, you do not have a right to appeal. Now, OPM has the authority to order Blue Cross Blue Shield to reverse its wrongful denial, but they refuse to take any action. OPM claims that Ms. Gonzalez failed to exhaust those administrative remedies, even though she was denied the right to do so. Ms. Gonzalez's doctor ordered proton beam radiation because the tumor was precariously close to her reproductive organs. He feared that the Intensity Modulated Radiation Therapy, or IMRT, would be too risky. See, PBRT is like a sniper rifle. IMRT is like a shotgun blast. And because BCBS denied her proton beam radiation, because Ms. Gonzalez could not appeal to OPM, and because she couldn't afford the proton beam radiation, she went forward with the only radiation treatment that Blue Cross would pay for, IMRT. You just said she could not appeal to OPM. You earlier said she was denied her right to appeal to OPM. Right. But again, all you're talking about is Blue Cross's statement to her that you're not entitled to do that. Yes. They are the carrier. They are the administrator of the plan. They are the ones who communicate with all nine million of the federal employees and their beneficiaries. They are the voice of the Federal Employee Plan. They're the ones who tell you what your processes are for appeal. They said you have no right to an appeal. As a result, Ms. Gonzalez went forward with the IMRT radiation. And unfortunately, just as her doctors warned, she won't be able to bear children as a result. Now, the District Court acknowledged that that was horrendous, right? That Ms. Gonzalez actually suffered a harm that was not self-inflicted, as Blue Cross Blue Shield would argue. But the District Court also concluded that the law does not afford Ms. Gonzalez a remedy from this court. So let that sink in. Ms. Gonzalez suffered a recognized wrong, but the court held that the law provides no remedy. Now, the District Court order of dismissal has to be reversed. And the grounds for reversal can be summed up in four Latin words, ubi just, ibi remedium. Ubi just, ibi remedium. This maxim of jurisprudence stands for the principle that for every wrong there is a remedy. It's a principle that's embedded in our nation's jurisprudence. This maxim is at the heart of the remedy in the Brown v. Board of Education case. The right to a remedy is fundamental in our judicial system. It's central to the concept of liberty. The right to a remedy even goes back farther than Brown v. Board. Chief Justice John Marshall in Marbury v. Madison told us that the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. Right? Justice Oliver Wendell Holmes told us that legal obligations that exist cannot be enforced, are ghosts that are seen in the law, that are elusive to the grasp. Right? Ms. Gonzalez's fever rights to receive the benefit of medically necessary radiation is just a ghost. Her fever right to OPM review of that denial, it's just a ghost. Her fever right to sue OPM, just a ghost. And here's the kicker. The district court concluded that she has no remedy for an acknowledged wrong, not based on statute or stare decisis. Right? It's based on the regulations drafted by OPM and the contract negotiated between OPM and BCBS. And the district court misinterpreted both to erroneously order dismissal of Ms. Gonzalez's case. There is subject jurisdiction for the case against OPM. Despite the fact that the district court concluded there are no benefits in dispute. And that the only remedy is to pay the amount of benefits in dispute. Counsel, that's the remedy you seek from this court. If we were to agree with you, you would expect a monetary award. If we were to agree with you in remand, you would pursue a monetary reward at this point. Is that correct? In part, your honor. In part. We're looking for the benefits that are in dispute. And yes, and I talk about in our brief, there's a way to calculate that. For a pre-service claim that's been denied. But we're also looking for injunctive relief. We need to get rid of the BCBS PBRT policy that is wrongfully denying cancer treatment. And we need to get rid of the ABD process that's depriving those wrongfully denied of ever getting OPM to review that denial. Now, district court found that Ms. Gonzalez's claims do not fall within the federal government's limited waiver of sovereign immunity. And there were two reasons given by the district court. One is that Ms. Gonzalez wasn't making a claim for benefits. And the other was that her authority to allow for a remedy was constrained and lacking. Why? Because of OPM's FEBA regulations. The district court took a back seat to OPM's FEBA regulations. Now, in finding no benefits in dispute, the district court didn't rely on a definition of benefits under the FEBA regulations. Why? Because there is none. OPM didn't put a definition of benefits in there. And the court also didn't rely on the definition of benefits that's under the contract because if you looked at the contract between BCBS and OPM, it talks about benefits being either the access to the service or the payment for the service. And the court missed that. And the court confined its definition of benefits to simply those that are received, paid for or reimbursed. These are all post-service claims. There has to be a right to pursue and appeal for the denial of a pre-service claim. Now, in terms of the district court's ruling on this issue, there was a split of authority. And the district court incorrectly relied on the Bryan v. OPM case instead of the Smith v. OPM case. The Bryan case that the court relied on is completely different. There, the plaintiff was denied the surgery but appealed it. It was reversed. And then after she was paid her benefits, after she was reimbursed the benefits she had paid, after that, that's when the plaintiff sued for additional recovery, for attorney fees and interest. That's not the case we have here. It's more in line with the Smith case, where in the Smith case the plaintiff said, we need some change here. We've got to change this federal plan because your federal plan is violating the Mental Health Parity and Addiction Equity Act. And the court agreed. And injunctive relief was allowed. That's what we're looking for here. The court should have followed the Smith case, not the Bryan case. Now, in terms of the OPM's argument as to no Article III standing for injunctive relief, the district court acknowledged that Ms. Gonzales suffered an injury in fact, but that the law provides no remedy. The court reasoned that there was no threat of future harm, that it was hypothetical, despite finding a reasonable probability of recurrence of the cancer. And so long as the PBRT guideline remains in place, and so long as the ABD process precludes people from appealing wrongful denials, it's not speculative or remote that Ms. Gonzales is likely to be denied benefits again. And Ms. Gonzales need only prove that it's likely, not certain. Her case is not hypothetical, remote, or speculative. That was the Whitmore decision that the court relied on. In terms of the claims against Blue Cross Blue Shield, Ms. Gonzales' state law claims should not be preempted. The claims implicate terms, do not implicate terms of the contract that relate to coverage, benefits, or payment. And the state law claims that she's suing upon do not relate to health insurance. These are common law claims. According to Blue Cross Blue Shield's argument and its infinitesimal interpretation of relate, there would be no state law claim that could be saved from preemption. But the Roach case explains that relate can't be taken literally. Why? Because universally, relations end nowhere, right? So as we argue, BCBS would be able to preempt any state law claim. And furthermore, as Roach explained, there's historic police powers that the states should not be preempted by federal law unless there's a clear and manifest congressional intent. Now this circuit has reflected a more expansive view and interpretation of relate in the corporate health insurance case and the Lakeland anesthesia case. A more pragmatic interpretation that preserves both the congressional intent and maintains, at the same time, traditional state rights. If the district court is correct that Ms. Gonzalez has not pled a claim for FEBA benefits, then Ms. Gonzalez's state law claims do not relate to benefits, so they shouldn't be preempted. Ms. Gonzalez's remedy would be under Texas state law. Now, if the district court is correct that Ms. Gonzalez's state law claims are preempted because they relate to FEBA benefits, then Ms. Gonzalez has alleged a benefits claim for which the district court has subject matter jurisdiction for her suit against the OPM. Now, there has to be, if the district court concluded that Ms. Gonzalez suffered an injury, in fact, and there is a reasonable probability of cancer recurrence, she has the standing to seek injunctive relief. This court must reverse the district court order of dismissal. If not, Ms. Gonzalez will have suffered a wrong without a remedy, and that would be contrary to our fundamental principle of our last five minutes of my time for rebuttal. Thank you. Thank you, counsel. All right. You may proceed. May it please the court? My name is Dawn Tice, and I represent the U.S. Office of Personnel Management. The court should affirm the district court's decision dismissing the claims against OPM for lack of jurisdiction. I'll focus my argument here on the reasons persuasive to the district court and rely on my briefing for the other grounds. The federal government appears before the court today in a somewhat different context than often you might see the federal government involved in cases before the court. Here, this is an insurance coverage dispute. Now, FEBA and the regulations implemented through the authority of FEBA provide for a limited waiver of sovereign immunity so that a health care beneficiary can seek review of a denied health benefits claim to OPM and then may challenge that decision of OPM in the district court. Let me ask you now, since I think you just, if I understood what you just said, you disagree with the statement in the record, the contemporaneous statement from the BCBS representative that plaintiff did not have the right to seek review, that that's a false statement? It is correct in this case that there wasn't a right to review because the appellant did not make a health benefits claim. So here they sought the advanced benefit determination, which is essentially a service provided to beneficiaries to give them an indication of how BCBS would adjudicate that claim. So it's not binding. It's only binding in the sense that it benefits the beneficiary, but it's not binding at all on OPM who must make the decision as to whether that beneficiary is entitled to coverage under the terms of the contract without respect to the ABD process. Well, for purposes of this case, if we could go back in time, wouldn't the plaintiff have the right to seek OPM review of this particular ABD determination? If she had received the service and then a claim was actually submitted for the service, then there would have been, and assuming the claim was denied, of course, there would have been a right to review to OPM. The alternative is that she would have underwritten the service herself or however which way and then gotten a review from OPM of the denial that was provided by Blue Cross. Do I understand correctly? I mean, I can't speak to the details of how between her and the provider the funding would have worked, but that's correct. Once the service had been provided, a claim for benefits would be submitted, and if BCBS denied that claim, then she had the right to appeal that to OPM. And assuming OPM agreed, then she would have been able to file suit in district court to challenge that decision if there were grounds. And be reimbursed for, if OPM agreed with her, she would have been reimbursed, and if they didn't, then she would have had the right then to go into federal district court. That's correct. Okay. All right. I just want to make sure I understand the mechanics of how this works, at least in theory under the law, the schematic for filing such a claim and having it processed through Blue Cross and up to OPM for review. So is there anything that I'm misunderstanding about? I think you laid it out, but is there anything more that you can tell us about that? Well, Mr. Feinberg may be able to shed more light on the process as it pertains to BCBS, but in terms of OPM's review, that is correct. And I'll add to that that based under that limited waiver of immunity, if she had then filed suit in district court, the benefits or the remedy is limited to an order compelling BCBS to pay the benefits in dispute. And at that point, there would be a monetary value associated with those benefits, because there would have been a health benefits claim submitted. There would be a value associated with that. On the issue of sovereign immunity, I'm glad you pointed that out. It's not waived until OPM actually takes some action on the claim. Is that correct? That's correct, Your Honor. Here, the challenge is to OPM's action, and here you have no action. There was no claim, no review by OPM. There was really nothing for the district court to review. There's no file or administrative record or decision with OPM with respect to this claim, because it just simply wasn't a claim. It was a service provided to the appellant, so she would have an idea of what the decision would ultimately be, and she could make her decision how to proceed with her treatment based on that non-binding information. Well, I guess my concern is, and maybe I need to ask Mr. Feinberg that same question. So there's this pre-services determination that we're not going to pay for this. BCBS is not going to pay for it. That's not appealable to OPM. It's also not binding, Your Honor. She might proceed with the therapy, submit her claim, and . . . So she gets a pre-services determination that BCBS is not going to pay, and that's not just for her to know. That's for the health care provider to know. I mean, they're going to want to know, how am I going to get paid if we do this? She says, well, my insurance carrier is not going to pay. Then she has to agree to pay, or pay, and then get the service and then file a claim and have BCBS deny it, and then appeal to OPM. That's how it works. That is correct, Your Honor. So as a practical matter, well, I guess that's not what you worry about. I guess BCBS worries about, as a practical matter. What you're telling me is, I've got to file a claim, get it denied, figure out something, because I've got to tell this medical provider I'm going to do something, even if it's agree to pay something I know I could never pay, maybe, and then hope and pray that, on the other end, they agree to do something they told me in front they're not going to do, and then go to OPM. That's the whole process. Your Honor, that is correct, but OPM, to be clear, is not bound by Blue Cross's decision. So if they were to make an incorrect decision, as appellant contents they have, they could have discussed that with the provider and worked out an alternative arrangement, and then they could... But they don't get to talk to OPM on the front end. She has no right to appeal that pre-services determination from BCBS. It is a benefit to give her an idea of what the ultimate result would be. That's correct. And the idea is, we're not going to pay for it. I mean, that's what they said. I understand that's what they said. That's correct, Your Honor. Not with a decision, but I know you're saying it's just an idea. At the end of the day, the waiver of immunity is limited, and that is because, without that waiver, you have really only review under the APA, which requires final agency action anyways, and it doesn't provide for money damages. So what she is able to obtain under this waiver of immunity under FEBA and the regulation still expands what she otherwise has availability to pursue against OPM in this situation. And I'm running out of time, so I won't be able to address the injunctive relief she seeks, except to emphasize that the court did reach the right decision. The injunctive relief would redress her alleged injuries, which is that she believed she was deprived the ability to have that PBT therapy in the past, and it's rather seeking wholesale improvement of the program. And if there are no further questions, Your Honors, I'd ask the court to affirm the district court's judgment. Thank you. Good morning, Your Honors. May it please the court, Adam Feinberg on behalf of the Blue Cross and Blue Shield Association and Healthcare Service Corporation. Although appellant's claims against Blue Cross, I'll refer to both of those private appellees as Blue Cross, fail for several reasons. I want to focus on the one that the district court addressed, which is express preemption under FEBA. But before I do that, I want to get to the question that both you, Judge Graves, and you, Judge Engelhardt, were getting at in terms of how the process works, because I do think that's pretty important here. And I think both of you have it right. Typically, there is no right whatsoever to have a decision made before the services are rendered. This is true for a variety of reasons, but from a pure policy perspective, OPM can simply not review the literally millions, if not billions, of services that are rendered to all of these federal employees throughout the year. And so the default is what's called a post-service claim. The plan explicitly lays out certain limited, very limited exceptions to that, and those are services that require what is called either pre-authorization for one category of services or prior approval for another category of services. Those are the only times an individual has the right to get a definitive answer from OPM before the service is rendered. And I want to emphasize that there is no dispute in this case that the services that Ms. Gonzalez wanted, the PBT, did not fall into that category. In other words, she concedes that she had no right to get an answer ahead of time. She said in one of her briefs that, quote, while the plan allows for the pre-service claim process, if the insured's doctor has ordered IMRT, that's the service she ended up having, the same is not true for PBT, the service she wanted. That's at page 1168 of the record. I would also direct the Court's attention to page 790 of the record, which contains paragraph 21 of the amended complaint, which also says essentially the same thing, that the plan defines categories of services for which pre-approval and pre-certification is required, but does not list PBT amongst them. So one of the fundamental problems for plaintiff in this case is that she simply has no right to what she wanted, which was a definitive answer ahead of time. Now there is this informal process, this advanced benefit determination, which could have been useful if Blue Cross would have said yes, we would have paid for it, but she has no right to that. If that didn't happen at all, she would have been no worse than she is now, having to wait until after the services are rendered, submit a bill, and go through the process culminating with review by OPM and ultimately judicial review of OPM's decision. And so I also want to point out that in Appellant's reply brief, they say that this was a pre-service claim, but that is fundamentally untrue. That is not consistent with their plaintiff's allegations that I just read, and it's not consistent with the plan terms. There are very limited circumstances where a pre-service claim can exist, which comes with it, the right to seek OPM review, and this is simply not one of them. Counsel, are you telling us that the language that BCBS used in telling the plaintiff that she could not appeal the coverage denial to OPM was technically correct under the scheme that you've described, the framework, or was that an incorrect statement in that she had a legal right to do so, but it was an erroneous statement by the representative of BCBS? Seems like an error to me. I don't think so, Your Honor, because the statement doesn't say you never have a right to seek OPM review. It says only you don't have a right to seek OPM review now of this pre-service determination. That's not quite what it says, though, is it? Well, I think it does. I think it explains that because this is a pre-service review, that's why you can't go to OPM, and it explains, it's got a whole paragraph in there that explains this so-called advanced benefit determination process, but I don't think that really matters at the end of the day because the federal plan is unbelievably explicit on these points and does go through in great detail the appeal rights to OPM that one has, as does OPM's regulations. But I think the question with respect to the claims against the Blue Cross entities is much more simple because all of the claims are brought under state law, and they're all plainly preempted under this Court's decision in Berkey almost 30 years ago. And Mr. Collins argued that neither condition for preemption is met, and the two conditions are simply that the claims implicate contractual provisions that relate to coverage or benefits. They plainly do here because plaintiffs' claims depend on things like radiation coverage or radiation therapy being covered or on the plan's exclusion for experimental or investigational services. Those plan provisions have to be interpreted in a certain way favorable to plaintiffs in order for her to succeed. And so her claim... Well, if we're talking about her state law claims, what about her claim for dealing with the ABD process? Well, I think that's the same. Is that different from some of these other claims? I don't think so at all, Your Honor, because for two reasons. First of all, the ABD claims, she doesn't have any sort of substantive right to ABD that would have gotten her anything. She claims that the ABD was sort of a ruse in order for Blue Cross to deny her the benefits that she was seeking. So even that claim is really all about benefits. But even if it's just about the process, it still relates to benefits. And this is another one of the major fundamental errors that a plaintiff makes. A claim has to be for benefits, but preemption is far, far broader. Preemption occurs whenever there's a contract provision that relates to benefits, with the phrase relates to being interpreted very broadly. It just has to refer to or have a connection with, this Court said in Berkey and the Supreme Court said in Nevels, the plan terms. And it obviously does. The plaintiff's claims obviously refer to the plan, their coverage provisions for radiation therapy. So you agree it's not a part of the plan, this ABD process involving claim for? That's correct. Not a part of the plan? There's no explicit plan provisions that talk about that. On the other hand, there are explicit plan provisions that do talk about the review and appeal process. And so plaintiff's claims implicate those provisions, because she alleges that the ABD process violates those plan terms. Well, you can't possibly make that determination without analyzing and certainly referencing the plan terms that do exist. But this is exactly the sort of situation that happened in Berkey, where the plaintiff wanted a certain type of treatment after receiving a spinal cord injury and becoming a paraplegic, or quadriplegic rather, and wanted prior approval to move to a private hospital that specialized in spinal cord injuries. And the carrier in that plan, GEHA, allegedly delayed things, never responded, and so the plaintiff never moved to the private specialized facility that she wanted to. And this court found several claims preempted, including damages claims, claims for attorney's fees, and the court found that not only the statutory claims that were specific to the insurance field were preempted, but it also found preempted common law claims. So Mr. Collins argued that, oh, well, these are just common law claims. They don't meet the statute's second requirement. But that's not true. This court in Berkey found a common law claim regarding how you, what qualifies as notice of a claim to the carrier, found that claim to be preempted, or rather that law, that state common law to be preempted, even though the common law had developed in a non-healthcare context. It developed in a different type of insurance context. And so as the Supreme Court has ruled in connection with other similar preemption statutes, when common law is being directed at a health plan, it qualifies as relating to that health plan for purposes of the second preemption requirement here. But returning to this court's decision in Berkey, the court specifically said, even though it found that the carrier wrongly denied benefits, that the benefits were due, and that the carrier's process was terrible, it still found all claims to be preempted except the claim for the benefits themselves. And that's exactly what we have here. Here, the benefits that Ms. Gonzalez actually received, the IMRT, are not at issue. She received those benefits. The plan paid for those, which is presumably why she doesn't include them in the lawsuit. All of her other claims are expressly preempted by FEBA. Thank you. Thank you, counsel. Roboto? Yes, thank you. Wow. There is no right to appeal the pre-service denial, despite the claims and post-service claims. OPM and Blue Cross Blue Shield just admitted there is no right to appeal. And this court gave them a chance to say, well, maybe the representative of Blue Cross Blue Shield made a mistake. No, that's right. There's no appeal. More than 1.9 million Americans will be diagnosed with cancer this year. Sadly, more than 600,000 of them will die from the disease. We can't afford to be having Blue Cross Blue Shield interjecting its own guidelines that are inconsistent with the standards of care to preclude people from getting the treatment they need to keep them alive. And to think that they have no right to appeal it. Oh, wait. All they have to do is pay for the service. Who's got the fund me account? That didn't work. That's not how health care should be delivered in America, certainly not under America's largest employer-provided plan. Yes, the federal employee plan is the largest one. It insures 9 million people. And why is OPM strangely, why are they walking lockstep with Blue Cross Blue Shield here? I mean, they're the human resources for the federal employees. Why aren't they taking care of the employees? Their CEO, if you will, President Biden, has announced his cancer moonshot. He extolled the benefits of proton beam radiation over IMRT when he visited Ohio State's new proton center. And of course he would boast about the benefits of these services. Of course he would. President Biden knows, he's well aware of the life-saving treatments that are offered by MD Anderson where Ms. Gonzalez tried to get her treatment. See, President Biden's son, Beau, was treated for his cancer at MD Anderson. He knows. And OPM should be following the President's lead and work to expand access to proton beam radiation, not sit back and watch BCBS slam the door in its members without any appeal rights. This court has to reverse the order of dismissal and allow Ms. Gonzalez to pursue discovery, pursue trial on the merits, and pursue her remedy. She should be allowed to question the witnesses about this clinically insufficient guideline. Who drafted it? And why don't you consider the National Cancer Society guidelines? And where is it now on your online library? Why have you removed it so we can't take a look at it for amendments? Ms. Gonzalez should be allowed to pursue those answers. She suffered a serious injury and harm. And it's all as a result of Blue Cross and Blue Shield's conduct and OPM's refusal to act. And for that wrong, this court must find that there's a remedy. I just can't accept their answer that there's no rights. How many times did I hear no rights in their arguments? I counted six times. For every wrong, there is a remedy. It would be us. It would be remedium. Please. Thank you. Thank you, counsel. The court will take this matter under advisement.